# The Cumberland Valley Mutual Protection Company *versus* Mitchell, for use, &c.

*Fraud in representation as to encumbrances a question of fact, not of law. — Concealment of encumbrances by assignee of policy. — Interest of assignee of policy in insured property need not be stated at transfer.— Waiver of forfeiture of policy.*

1. In an action on a policy of insurance, where the defence rested on a false representation by the party insured, as to the existence of encumbrances on the property, it was held not error in the court to refuse to instruct the jury, as matter of law, that it was such a fraud on the company as would avoid the policy. Whether the false representation was or was not wilful and fraudulent, was a question of fact for the jury, under proper instruction as to the effect of such a representation.

2. Nor was it error to refuse to charge the jury, that the concealment of the existence of encumbrances, at the time when the ratification of the transfer of the policy was procured, was such a fraud on the company as would vitiate the policy in the hands of the assignee.

3. It is not necessary that the interest of persons in the property insured be stated, when application is made for the ratification of the transfer of a policy of insurance.

4. A contract of affirmance founded on misrepresentation is voidable but not void, and if an insurance company, after knowledge of the facts, recognise the existence of the contract, by acting upon it, demanding and receiving payments of assessments under it, they thereby waive all right to avoid it.

ERROR to the Common Pleas of *Indiana county.*

This was an action of covenant by James Mitchell, for the use of David Ellis and Conrad Hoffman, against The Cumberland Valley Mutual Insurance Company, on a policy of insurance issued by the defendants on the 24th of April 1857, covering a steam-mill then owned by the legal plaintiff.

The material facts of the case were these :—

On the 3d January 1857, William C. Boyle was the owner of the property, subject to a mortgage of James and John Sutton for \$1116.62. On that day he executed a deed to James Mitchell, the legal plaintiff in this case.

On the 24th April 1857, upon the application of James Mitchell to the agent of the defendants, dated March 31st 1857, they issued the policy now in suit. That policy covenanted on the part of the defendants to insure against fire the steam-mill, to

the amount of $1000, for five years. It was accompanied by a premium note of $250, on which $12.50 was paid. At the time this policy was issued to James Mitchell, he was, in addition to the mortgage given by Boyle, largely indebted by judgments. There was also a mechanic's lien entered July 31st 1856. In the application made by Mitchell, and in response to the interrogatory in regard to liens, he said "there were none."

On the 5th July 1857, Mitchell sold by articles of agreement to Ralston, Ellis & Carter (with a coal lot), for the consideration of $16,000. On this article a large amount of purchase-money was paid; and on the 20th July 1857 Mitchell assigned and transferred the policy to Ralston, Ellis & Carter in due form. As the by-laws and schedule to the policy required all transfers to be approved by the secretary of the company, in accordance with that rule, the policy was transmitted to the secretary, and was by him approved and assented to on the 7th September 1857. On the 20th July, the date of the day of transfer, Ralston, Ellis & Carter gave their premium note for $250.

The mill was levied upon under process on these judgments issued to December Term 1858, and at that term was sold to John Watt for $3002.50, and the sheriff executed a deed to Watt, which was duly acknowledged in open court, on the 7th January 1859.

On the 5th January 1859, John Watt sold to David Ellis by articles, who paid the purchase-money to the sheriff. On the 24th January 1859, Ellis agreed to sell the one undivided half to Conrad Hoffman. On the 29th January 1859, Ralston, Carter & Ellis assigned and transferred this policy to Ellis & Hoffman in the presence of Mr. McLain, the agent of the company, by him transmitted to the secretary and by him approved and ratified on the 14th February 1859, and a premium note was given by Ellis & Hoffman. All the assessments made from time to time upon the respective holders of the policy were regularly paid as they were made and demanded, and continued to be so down till the time of the loss and afterwards.

On the night of the 1st August 1859 the mill was entirely destroyed by fire.

Under this state of facts the defendants' counsel requested the court to charge the jury,

1. James Mitchell having stated in his reply to the question in regard to encumbrances on the property insured, "there were none," and the records exhibited in this case showing a large amount of encumbrances, was such a fraud upon the company as avoids the policy as matter of law, and the plaintiffs cannot recover.

2. That the concealment of the large amount of encumbrances upon the property subsisting at the time that Ralston, Ellis & Carter procured the ratification of the transfer of the policy from James Mitchell, and not having disclosed those encumbrances to

[Cumberland Valley Mutual Protection Co. *v.* Mitchell.]

the defendants, or their agent, was such a fraud upon the company as would avoid that ratification, even if the policy was good in the hands of Mitchell.

3. That at the time of the ratification by the company of the several transfers to Ralston, Ellis & Carter, and Ellis & Hoffman, the respective assignees being possessed of equitable interests in the property insured, and the application not describing their interests as such, but insuring the same as owners of the fee simple, was such a misdescription of the interest in the same as will avoid the policy.

The court (BUFFINGTON, P. J.), after stating the facts of the case, charged the jury as follows :—

"The case has very properly been considered in reference to the three periods in the ownership in the policy. The first, while Mitchell held it; the second, while Ralston, Ellis & Carter owned; and third, the position of Ellis & Hoffman after their purchase, and the transfer of the policy to them, with the assent of the company.

"How was it, then, in the hands of Mitchell? He made the application to the regular agent, he gave the premium note for $250, paid the percentage and the cost, and, in due course, received this policy. If the matter rested here, it is probable there would have been less difficulty, perhaps no hesitation to pay. But it is contended that there was a false and fraudulent misrepresentation made by Mitchell to Mr. Sampson, the agent, by his answer to the question as to encumbrances, and that, in his application in writing, he said in substance, there were no encumbrances.

"[I do not view the declaration of Mitchell, in the application, as a warranty, which requires a strict and literal compliance and performance, but a representation merely. If that representation, however, was false and fraudulent, and of a nature calculated to mislead and deceive, it would equally avoid the policy, as a false warranty. Whether there was a falsehood in this case is for the jury. From the evidence, it appears there was. He answered in the written application that there were no encumbrances, whereas the evidence of the records shows very clearly there were quite a large number. Was this misrepresentation fraudulent? Was it calculated to deceive in a matter which the company deemed material? Was it wilful on his part, or simply the result of inadvertence? These are questions for the jury.] Its falsity, if the jury believe it, is a strong presumption of a sinister purpose and fraudulent design, but if the jury believe that the evidence rebuts that presumption and discloses an innocent purpose, they may so find it. If it was false and fraudulent, the policy would have been void in the hands of Mitchell, and if loss had occurred then he could not have recovered.

[Cumberland Valley Mutual Protection Co. v. Mitchell.]

" We come to the second point:

" A void contract is one that has no validity whatever, as being against the policy of the law, or for other reasons, rendering it of no binding force. But a contract that is fraudulent and may be avoided by the party defrauded, is good as to all other persons; and the guilty party, not being permitted to take advantage of his own wrong, is bound by it. It is, therefore, only the party wronged or cheated that can avoid it, and as to him and him alone it is invalid. It may turn out to be for his benefit, in which case he may treat it as good, and hold the other party bound. A private contract in general, in which the parties alone are interested, is, therefore, only voidable, not absolutely void; and as such we view this policy. If, at any period of Mitchell's ownership, the company alleged they were deceived and desired to avoid the policy, they could do so, if deceived by the hand of Mitchell. But they might ratify it, by agreeing to subsequent transfers to innocent assignees, and if they did so ratify it, with a knowledge of the facts, made known, either to the company or their agent, after such ratification they would be bound by the agreement in the hands of a *bonâ fide* holder.

" These views apply equally to the transfer from Mitchell to Ralston, Ellis & Carter, and to the one from Ralston & Co. to Ellis & Hoffman, with the addition in the latter that Ellis told the agent, Mr. McClain, that he held under a sheriff's sale.

" The case then becomes one for the jury. We think that if the case rested on the policy in the hands of Mitchell, that the falsehood in the application, standing alone, would raise a presumption of fraud and would avoid the policy. But the jury may find the representation to have been an inadvertence, if the evidence satisfies them to that effect. If the jury find the policy to have been good in the hands of Mitchell, then there is an end of this case, [but if invalid in his hands, if the jury believe it was transferred to Ralston & Co. and by them to Ellis & Hoffman— that they were innocent holders and assignees—and that was duly ratified by the company, by approving of the transfer, and that they paid all the assessments demanded by the company from them, it would be a ratification, and they would be bound.]

" If the jury find for the plaintiffs, the measure of damages is the $1000 in the policy, with interest from the time of loss—the 1st August 1859."

The points were answered as follows:—

" 1. We cannot answer this point as requested. That there was a falsehood, the papers and record show. And the fact of its being false raises a strong presumption of fraud; still, whether wilful and fraudulent, is a question of fact for the jury, under all

[Cumberland Valley Mutual Protection Co. *v.* Mitchell.]

the evidence. Fraud is not an inference of law, but one of fact. The point is therefore answered in the negative.

" 2. This point is answered in the negative, if there was a ratification.

" 3. This point is answered in the negative."

Under these instructions there was a verdict and judgment in favour of the plaintiff. The defendant thereupon sued out this writ, and assigned for error the answers given by the court to the points above, and so much of the general charge as is printed above in brackets.

*Th. & H. White* and *H. W. Weir*, for plaintiffs in error.

*William Banks, W. M. Stewart,* and *H. D. Foster,* for defendant.

The opinion of the court was delivered by

AGNEW, J.—The first point of the defendants below is founded in a misconception that the application of Mitchell & Boyle formed a part of the policy for any other purpose than description of the property insured. At least in the absence of the policy, which the plaintiffs in error have not thought it worth while to furnish us upon our paper-book, we can discover no more.

This clause is printed for us: " Reference being had to the application of the said Mitchell & Boyle, which forms a part of the policy, *for a more particular description of the property insured hereby.*" We take it for granted this clause follows immediately the statement in the policy of the property insured, and in this connection, therefore, was understood to make the application part of the policy for description and identification only, and not as containing any stipulation or warranty. The first point was constructed in view of the answer of Mitchell to the question in the application respecting encumbrances being a warranty; and asked the court therefore to say that the fact of existing encumbrances avoided the policy as a matter of law. The answer of the court leaving it to the jury as a question of fraud in fact, was correct. And viewing it as a false representation, as it undoubtedly was, the answer of the court was not erroneous. It is to be taken in connection with the general charge, in which the law is fairly stated to the jury, giving to the defendant below every advantage upon the facts, if the answer of Mitchell were found to be false, fraudulent, and material; all of which was necessary to avoid the policy on the ground of misrepresentation.

We see no error in the answer to the second point. The policy was to run five years, and the assignment and ratification were

[Cumberland Valley Mutual Protection Co. *v.* Mitchell.]

within the term. So far as it appears on our paper-book, there were no restrictions upon assignment or conditions to be performed by the assignee beyond that of procuring the consent of the company. Without that consent there could be no lawful assignment, but further than this we discover nothing calling upon the assignee to state the encumbrances. If there be anything in the act of incorporation or by-laws, it has not been set forth. Even against the party originally insured the policy cannot be avoided for encumbrances, unless upon his false and fraudulent answers to interrogatories, and much less can it be as to his assignee, who is not called upon to respond to any interrogatories.

There is no error in the answer to the third point. Our reasons are to be found in the opinion just delivered, in the case of The Lycoming Insurance Company *v.* Mitchell & Boyle.

When the portion of the charge contained in the fourth assignment of error is read, as it must be, in connection with the remainder of the same paragraph, and with the last paragraph of the charge relating to the same subject, it will be found that the whole question of misrepresentation, its falsehood, its fraud, and its materiality was fairly left to the jury, to whom it belonged, as a question of fact, and that no error was committed.

The fifth assignment of error, in selecting one portion of the charge as error, leaves out of view what the judge had before distinctly told the jury. Ratification certainly ought not to be presumed without knowledge of the thing to be ratified. But the judge had only a moment before said to the jury that "they (the defendants) might ratify it (the policy) by agreeing to subsequent transfers to innocent assignees, and if they did so ratify it, *with a knowledge of the facts* made known either to the company or their agent; after such ratification, they would be bound by the agreement in the hands of a *bonâ fide* holder."

A contract of affirmance, founded on a misrepresentation, is not void, but only voidable. The insurers may avoid it, but are not bound to do so, and if they go on afterwards by recognising it, and acting upon it, or by demanding and receiving payment of assessments, they waive the right to avoid, and must stand upon it.

　　　　　　　　　　　　The judgment is affirmed.